IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALEXIS PICARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 3:10-CV-634-K |
| CITY OF DALLAS and | § | |
| KIRAN MAKANJI, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants City of Dallas ("the City") and Kiran Makanji's Motion for Summary Judgment (Doc. No. 52). The City and Mr. Makanji (collectively "the Defendants") have demonstrated that no genuine issue of material fact exists with regard to any of Plaintiff Alexis Picard's claims because Mr. Makanji's actions do not constitute sexual harassment, a condition of Ms. Picard's employment was not contingent on the acceptance or rejection of sexual overtures, she was terminated for legitimate, non-discriminatory reasons, and she was not contacted in an offensive or provocative manner. Defendants' motion for summary judgment is **GRANTED** and all of Ms. Picard's claims are **DISMISSED with prejudice**. Final judgment will be entered in a separate document. FED. R. CIV. P. 58(a).

## I.      Background

Ms. Picard was hired by the City of Dallas Water Utilities as a chemist in December 2008 and assigned to the Southside water treatment plant.  She had previously worked for the City of Fort Worth, Texas in a similar capacity a number of years before.  As part of the City's probationary hiring program, she would be evaluated for six months before a final decision was made regarding her employment.  Ms. Picard's duties as a chemist for the City included testing and analyzing water samples at the water treatment plant.  Ms. Picard's supervisor at the Southside plant was Mr. Makanji, who oversaw multiple chemists and generally managed Southside's quality control procedures.

In this suit, Ms. Picard alleges that Mr. Makanji acted inappropriately on several occasions, beginning in early 2009 and running through May of that year.  Though Defendants dispute many of these points, on summary judgment the Court must view the evidence presented in the light most favorable to Ms. Picard.  Ms. Picard states Mr. Makanji would stare at her for inordinate amounts of time.  Ms. Picard recalls a specific conversation, a few days after she had started work, involving herself, Mr. Makanji, and another co-worker, where Mr. Makanji remarked, "What do you think? Should I keep [Ms. Picard] or let her go?"

Ms. Picard also states Mr. Makanji asked her to stay late after work so that they could be alone together on multiple occasions, though she does not allege anything

happened as a result; Ms. Picard would instead wait outside the building until her husband came to pick her up.  Ms. Picard reported to Bill Gase, Mr. Makanji's supervisor at Southside, that Mr. Makanji had been "acting weird" in February 2009, and requested a transfer to another facility.  She did not mention any specifics about Mr. Makanji's behavior.  Mr. Gase denied Ms. Picard's request, telling her many people wanted transfers and he could not accommodate every request.

Ms. Picard has recounted two or three incidents, beginning in March 2009, where Mr. Makanji approached her from behind while she was working and placed his hand on her back or left shoulder while she was sitting at a laboratory table.  She states she was startled because she thought she had been alone in the room.  Ms. Picard also states Mr. Makanji told her he loved her in April 2009.  On all of these occasions, Ms. Picard states she rebuked Mr. Makanji's advances.  Ms. Picard asserts she complained a second time to Mr. Gase in April 2009, stating again that Mr. Makanji was "acting very weird" and had told Ms. Picard that he loved her.  She also states she requested a transfer again, but that it was not granted.

In May 2009, Ms. Picard contacted Morgan Dadgostar, Mr. Gase's supervisor.  Ms. Dadgostar investigated Ms. Picard's complaints, met with Mr. Makanji, and interviewed both Ms. Picard and Liji Samuel, one of Ms. Picard's co-workers.  On May 14, 2009, Mr. Makanji submitted performance reviews of Ms. Picard for her probationary employment evaluation, which mentioned mistakes she had made over the

previous three months.  Ms. Picard argues that Mr. Makanji's unfavorable review was retaliation for her reports to Ms. Dadgostar, which Mr. Makanji learned about on May 8, 2009.  Ms. Picard admits making mistakes in her work, but claims Mr. Makanji exaggerated incidents in his report.

Ultimately, Ms. Dadgostar decided to transfer Ms. Picard to the Central wastewater treatment plant on May 27, 2009.  There, she was supervised by Mr. Emanuel Kasey, who filled Mr. Makanji's position at Central.  After the transfer, Mr. Kasey acknowledged that, while Ms. Picard was still making testing mistakes, he had noticed improvement in her work.  With Ms. Picard's probationary period ending soon on June 16, 2009, Ms. Dadgostar requested a three month extension to continue evaluating Ms. Picard.  The extension was rejected by the City's civil service board, and Ms. Picard was terminated on June 10, 2009 when her position came up for review.

Ms. Picard filed this lawsuit on March 31, 2010 for sexual harassment and retaliation against the City and for assault against Mr. Makanji.  Defendants filed this motion for summary judgment on all of Ms. Picard's claims on June 2, 2011.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d

253, 261 (5th Cir. 2007).  The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322–25.  Once a movant makes a properly supported motion, the burden shifts to the non-movant to show that summary judgment should not be granted; the non-movant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party in the face of all evidence presented.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A fact is material if it could affect the outcome of the lawsuit under the governing law.  *Id.*  All evidence and reasonable inferences must be viewed in the light most favorable to the non-movant.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III.  Analysis

Ms. Picard has articulated two causes of action against the City, sexual harassment and retaliation, and one for assault against Mr. Makanji.

### A.  Sexual harassment

Ms. Picard has accused Mr. Makanji, her direct supervisor at the Southside water treatment plant, of sexual harassment.  Sexual harassment claims can be divided into two

categories: (1) quid pro quo claims, where an employee is required to accept sexual advances in order to keep his or her job, to be considered for a promotion, and/or to avoid being fired or demoted; and (2) hostile work environment claims, where an employee is surrounded by a sexually charged, oppressive atmosphere that is severe and pervasive enough to affect a term, condition, or privilege of employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (describing a hostile work environment claim where the harasser is the plaintiff's supervisor).

The first step in a suit where an employee's supervisor is accused of sexual harassment is to determine if the employee has suffered a tangible employment action. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 524 U.S. at 761. If the employee has suffered a tangible employment action, the case is classified is as quid pro quo; if not, the case is classified as hostile work environment. *Casiano*, 213 F.3d at 283.

Here, all parties agree Ms. Picard suffered a tangible employment action: she was terminated at the end of her probationary period in June 2009. App. to Def. Mot. at 237 (termination letter). In addition, though the City moved for summary judgment on both quid pro quo and hostile work environment grounds, Ms. Picard only responded

to the quid pro quo argument. Resp. to Def. Mot. at 12–16, Doc. No. 28. If Ms. Picard had pursued a hostile work environment claim at any point, she clearly abandoned it in her response. *Id.*; *Fallon v. Fortis Health*, No. H–04-2904, 2006 WL 148903, *15 (S.D. Tex. Jan. 18, 2006); *see also Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir 1987) (stating issues not briefed on appeal are abandoned). Because Ms. Picard suffered a tangible employment action and has only challenged the City's motion for summary judgment on quid pro quo grounds, Ms. Picard's case will be treated as quid pro quo.

For a *prima facie* case of quid pro quo sexual harassment, the plaintiff must show: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the acceptance or rejection of the harassment by the employee must be an expressed or implied condition to receive a job benefit or to avoid a job detriment. *Jones v. Flagship Intern.*, 793 F.2d 714, 721–22 (5th Cir. 1986). To demonstrate a quid pro quo claim, the plaintiff must show there is a causal nexus between the acceptance or rejection of the sexual advances and the tangible employment action. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009). The City argues Ms. Picard has failed to raise a genuine issue of material fact as to two elements: whether or not Mr. Makanji's conduct constituted unwelcome sexual harassment and whether or not there is a casual nexus between that behavior and Ms. Picard's termination.

### 1.      Did Mr. Makanji's behavior constitute unwelcome sexual conduct?

To show she was subjected to unwelcome sexual conduct, Ms. Picard points to the following evidence: (1) Mr. Makanji stared at her and her breasts, Resp. at 13; (2) Mr. Makanji told Ms. Picard he loved her, *id*.; and (3) Mr. Makanji touched Ms. Picard's shoulder or arm while she was seated at a laboratory table after he walked up behind her, *id*.

The allegations by Ms. Picard against Mr. Makanji are not of the type forbidden by Title VII.  Although Ms. Picard's allegations might make a workplace uncomfortable, they do not rise to the level of sexual harassment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (Title VII is not a "general civility code").  Allegations of conduct worse than that alleged by Ms. Picard have been found insufficient to establish quid pro quo sexual harassment as a matter of law.  *De La Torre v. Merck Enter.*, 540 F. Supp.2d 1066, 1079–80 (D. Ariz. 2008) (shoulder massage was insufficient as a matter of law to suggest that sexual favors were requested and such favors were a condition of promotion); *Campanello v. Anthony & Sylvan Pools* Corp., No. 3:03-CV-1884-G, 2004 WL 2049313, *7 (N.D. Tex. Sept. 14, 2004) (Fish, C.J.) (summary judgment granted where supervisor kissed employee on cheek after employee underestimated his age by eight years); *Prigmore v. Houston Pizza Ventures, Inc.*, 189 F. Supp.2d 635, 639 (S.D. Tex. 2002) (manager allegedly questioned employee about her spouse's infidelity, asked if she wanted to pay him back, tugged on the hemlines of her clothing twice, told her she

looked nice with shorts on, and more); *Pfeil v. Intecom Telecomm.*, 90 F. Supp.2d 742, 745 (N.D. Tex. 2000) (Lindsay, J.) (manager would frequently undress plaintiff with his eyes, told plaintiff she would look good in mini-skirts, grunted approval of plaintiff's appearances several times when she entered the room, and more). Ms. Picard's failure to raise a genuine issue of material fact as to unwelcome sexual conduct precludes her claim for quid pro quo sexual harassment.

## 2. Was there a causal nexus between the acceptance or rejection of Mr. Makanji's conduct and Ms. Picard's termination?

Even if Mr. Makanji's actions constitute sexual harassment, there is no causal nexus between his actions and Ms. Picard's termination, something the plaintiff is required to demonstrate for a quid pro quo claim. *Alaniz*, 591 F.3d at 772. To meet her burden, Ms. Picard must show that Mr. Makanji explicitly or implicitly conditioned her job or job benefits on her acceptance of sexual conduct. *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007); *see also Whitaker v. Carney*, 778 F.2d 216, 220 (5th Cir. 1985) ("sexual harassment [includes situations] when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment . . . .")

The City has consistently stated Ms. Picard's termination was for unsatisfactory job performance and had nothing to do with her acceptance or rejection of Mr. Makanji's behavior. The reason stated for Ms. Picard's termination in her discharge letter was her "inability to consistently and successfully perform the job responsibilities

of her position." App. to Def. Mot. at 237.  Mr. Makanji documented over 160 analysis mistakes made by Ms. Picard on 70 different occasions from December 2008 until May 2009.  *See* App. to Def. Mot. at 122–200 (various analysis worksheets with errors noted). Ms. Picard also failed two performance tests, one in March 2009 and a second in May 2009, where she was asked to identify samples.  *Id*. at 125.  In her letter requesting an extension for Ms. Picard's probationary period, Ms. Dadgostar stated "[Ms. Picard] has been making some mistakes performing analysis during her first five months of her probation" and that "[Ms. Picard] needs to pass her performance testing (QC) samples." *Id*. at 236.

Ms. Picard does not allege that Mr. Makanji ever told her she would be required to accept sexual advances in order to complete the probationary period and keep her job, which means Mr. Makanji did not explicitly condition Ms. Picard's job on the acceptance of sexual conduct.  Therefore, in order to meet her burden to raise a genuine issue of material fact as to whether Mr. Makanji conditioned her job on the acceptance of sexual conduct, Ms. Picard attempts to show Mr. Makanji implied as much, through both his words and conduct.  In support, she points to the following evidence: (1) a few days after Ms. Picard began work, Mr. Makanji asked one of Ms. Picard's co-workers, in Ms. Picard's presence, "What do you think? Should I keep [Ms. Picard] or let her go?", Resp. at 13; (2) Mr. Makanji mentioned Ms. Picard's analysis errors to Mr. Gase after Mr. Makanji asked Ms. Picard to stay late after work to be alone with him and she

refused, *id*. at 15; (3) Mr. Makanji filed unfavorable performance reviews in May 2009 for Ms. Picard after she reported her concerns to Ms. Dadgostar, *id*.; and (4) the decision to terminate Ms. Picard was based on Mr. Makanji's reports and notes, *id*.

The actions cited by Ms. Picard as evidence that Mr. Makanji conditioned her future employment on acceptance of his overtures reveal no such connection. Ms. Picard relies upon her own deposition testimony when she states Mr. Makanji asked one of her co-workers, in Ms. Picard's presence, whether he should "keep her or let her go." Picard Depo. at 92, App. to Pl. Resp. at 37. At first glance, this would appear to be Ms. Picard's strongest piece of evidence. However, this exchange took place only a few days after Ms. Picard started. *Id*. This event occurred months before Ms. Picard alleges Mr. Makanji said "I love you" or touched her arm or shoulder in the laboratory. Mr. Makanji's questions were directed to one of Ms. Picard's co-workers after Ms. Picard and the co-worker had finished an assignment. *Id*. There is no evidence of sexual overtones in the questions: Ms. Picard does not allege Mr. Makanji stared at her, looked her over, or touched her when he spoke. *Id*. In other words, this event is not evidence of a causal nexus between the acceptance of sexual conduct and Ms. Picard's termination. *Alaniz*, 591 F.3d at 772.

Ms. Picard further states Mr. Makanji asked her to stay late so he could be alone with her and she said no. Picard Depo. at 44–45, App. to Pl. Resp. at 17–18. There is no evidence Mr. Makanji requested any sexual interaction when he asked her to stay

late. *Id.* Also, the cause-and-effect relationship between Ms. Picard's refusal to stay after work and unfavorable reports to Mr. Gase is not as clear as she alleges.  Ms. Picard cannot recall specific dates, but thinks Mr. Makanji asked her to stay late in "late December or in the beginning of February."  Picard Depo. at 44, App. to Pl. Resp. at 17. Mr. Gase couldn't "recall exact dates," but stated in his deposition that Mr. Makanji mentioned Ms. Picard's errors "pretty much from January to May."  Gase Depo. at 49, App. to Pl. Resp. at 109.  This is not evidence Mr. Makanji was conditioning Ms. Picard's job on her acceptance of sexual conduct.  *Alaniz*, 591 F.3d at 772.

Mr. Makanji has stated his performance review of Ms. Picard, delivered May 14, 2009, was composed six days after he learned Ms. Picard had accused him of sexual harassment.  Makanji Depo. at 112–13, App. to Pl. Resp. at 59.  The timing, by itself, may appear suspicious.  However, the record shows that Mr. Makanji had repeatedly reported Ms. Picard's performance issues in the past.  *See* Gase Depo. at 49, App. to Pl. Resp. at 109 (Mr. Makanji reported Ms. Picard's errors "pretty much from January to May").  This is not evidence Mr. Makanji was conditioning Ms. Picard's job on her acceptance of sexual conduct.  *Alaniz*, 591 F.3d at 772.

As proof of the basis for her termination, Ms. Picard relies on Mr. Kasey's testimony.  Mr. Kasey was Ms. Picard's supervisor at Central after she left the Southside treatment plant.  In his deposition, Mr. Kasey states that Ms. Dadgostar and Mr. Makanji made the decision to terminate Ms. Picard.  Kasey Depo. at 39, App. to Pl.

Resp. at 98 ("Q: Who made the decision to terminate [Ms. Picard]? At least, again, that you understand. A: Ms. Dadgostar and [Mr. Makanji], I guess."). However, as his quote suggests, Mr. Kasey is less than certain about it. *Id.* Conclusory allegations, speculation, and unsubstantiated assertions are insufficient to carry the non-movant's burden when responding to a motion for summary judgment. *Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc). Given its speculative nature, Mr. Kasey's comment is not competent evidence that Mr. Makanji made the decision to terminate Ms. Picard, or that Mr. Makanji conditioned her employment upon her acceptance of sexual conduct. *Id.*; *Alaniz*, 591 F.3d at 772.

When a plaintiff has accused a supervisor of impliedly conditioning her job or job benefits on her acceptance of sexual conduct, the evidence must demonstrate that a reasonable person would have believed her job depended on fulfilling the supervisor's wishes. *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173–74 (9th Cir. 2003). Ms. Picard does not allege a single incident where Mr. Makanji coupled his allegedly inappropriate behavior with discussions concerning her future employment with the City. Ms. Picard has not set forth any proof raising a genuine issue of material fact whether a reasonable person would not have felt her job depended on fulfilling Mr. Makanji's alleged wishes. *See id*.

Ms. Picard has failed to raise a genuine issue of material fact as to her claim for quid pro quo sexual harassment, which therefore fails as a matter of law. *Triple Tee Golf,*

-13-

485 F.3d at 261.

### B.     Retaliation

Retaliation may be proved by either direct or circumstantial evidence.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).   "Direct evidence is evidence which, if believed, proves the fact without inference or presumption."  *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).   Here, Ms. Picard has presented no direct evidence of retaliation, that is, no evidence which directly discloses that the reason for her termination was retaliation.   If the plaintiff presents circumstantial evidence, the familiar *McDonnell Douglas* burden shifting framework is used.  *McCoy*, 492 F.3d at 556.   Under *McDonnell Douglas*, the plaintiff must first present a *prima facie* case of retaliation.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).   Once this occurs, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for the adverse employment action.   *Id.*   To overcome an employer's legitimate, non-discriminatory reason, the plaintiff must show it is a pretext for discrimination.  *Id*.

#### 1.     *Prima facie* case

A *prima facie* case of retaliation consists of: (1) the plaintiff engaging in a protected activity; (2) an adverse employment action; and (3) a causal connection that exists between the protected activity and the adverse employment action.  *LeMaire v. La. Dept. of Transp.* & *Dev.*, 480 F.3d 383, 388 (5th Cir. 2007).   An employee has engaged in a "protected activity" if she has either (1) opposed any employment practice made

-14-

unlawful by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII. *Grimes v. Tex. Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). An adverse employment action is one that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

### a.     Protected activity

Ms. Picard asserts she engaged in protected activities when she: (1) rebuked Mr. Makanji's overtures; (2) complained to Mr. Gase in February 2009; (3) complained again to Mr. Gase in April 2009; and (4) complained to Ms. Dadgostar in May 2009. Pl. Resp. at 17. Defendants counter that Ms. Picard's only report was to Ms. Dadgostar in May 2009, and that this report only stated Mr. Makanji stared at Ms. Picard to the point it made her uncomfortable. Def. Reply at 13. Defendants argue Ms. Picard cannot show she had a reasonable belief that she was subjected to sexual harassment, which is a requirement for a retaliation claim. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

Defendants, in their reply, ignore Ms. Picard's assertions that she complained about Mr. Makanji's behavior directly to him and to Mr. Gase before her poor performance review and her termination. Given the minimal burden to present a *prima facie* case, *Guthrie v. Tifco Indus.*, 941 F.2d 374, 377 (5th Cir. 1991), this Court finds that

Ms. Picard has identified sufficient evidence to show she was engaging in a protected activity when she confronted Mr. Makanji about his behavior and when she reported that behavior to Mr. Gase.

### b.  Adverse employment action and causal connection

Ms. Picard was terminated on June 10, 2009.  App. to Def. Mot. at 98. Obviously, termination is an adverse employment action.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).  Defendants do not dispute this element.

As the final element of Ms. Picard's *prima facie* case of retaliation, she must show that there was a causal connection between her protected activity and the adverse employment action.  *LeMaire*, 480 F.3d at 388.  "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation."  *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (quotation omitted).  Ms. Picard has shown that she reported concerns to Ms. Dadgostar a little over a month before she was terminated, was transferred at her own request to Central by Ms. Dadgostar to get away from Mr. Makanji, and Ms. Dadgostar signed her termination letter.  Dadgostar Depo. at 67–70, App. to Pl. Resp. at 78; App. to Def. Mot. at 237 (termination letter).  With this evidence, and the lower standard for causation at the *prima facie* stage, *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001), Ms. Picard has met her burden to show a causal connection between engaging in a protected activity and her adverse

employment action, and has therefore presented a *prima facie* case of retaliation.

### 2.    Legitimate, non-retaliatory reason for Ms. Picard's termination

An employer must provide a legitimate, non-retaliatory reason for the adverse employment action if the employee has presented a *prima facie* case of retaliation. *McCoy*, 492 F.3d at 557.   The City states it terminated Ms. Picard for performance deficiencies, and Ms. Picard concedes this satisfies the City's burden, Pl. Resp. at 19. This Court accepts poor job performance as a legitimate, non-retaliatory reason for Ms. Picard's adverse employment action.  *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (poor job performance a legitimate, non-retaliatory reason).

### 3.    Was the reason given by the City pretext for retaliation?

Once an employer has provided a legitimate, non-retaliatory reason for an adverse employment action, the burden shifts back to the employee to prove that the proffered reason is a pretext for retaliation.  *Gee*, 289 F.3d at 345.  Ms. Picard argues that the reason given for her termination, poor performance, was a pretext for retaliation or, alternatively, that retaliation was a motivating factor in the City's decision.  A plaintiff is entitled to satisfy this factor through either showing, pretext or mixed motive.  *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010).

In support, Ms. Picard states the City has given inconsistent explanations both for her termination and her transfer to the Central wastewater treatment plant.  Ms. Picard argues the City acted inconsistently when it terminated her for poor performance,

-17-

App. to Def. Mot. at 237, while at the same time requesting an extension of her probationary period, *id*. at 236.   Contrary to Ms. Picard's assertions, this Court finds nothing inconsistent in the City's request for an extension of her probationary period; such a request is actually consistent with a belief that she was not ready for full-time employment.   In fact, Ms. Dadgostar's request for an extension, which was denied by the City's civil service board, supports the City's position that Ms. Picard's reports had nothing to do with the decision to terminate Ms. Picard.   Had Ms. Dadgostar wanted Ms. Picard gone, she would not have requested the extension; it would have been easier to let Ms. Picard's probationary period expire and refuse her further employment.   Also, in her letter requesting the extension, Ms. Dadgostar communicated Ms. Picard's continued analysis mistakes after five months on the job.   *Id*.   Her job performance has repeatedly and consistently been cited as the reason for her termination, by every supervisor Ms. Picard had with the City.   *See* Dadgostar Decl. at ¶ 14, App. to Def. Mot. at 235; Makanji Decl. at ¶¶ 5–6, App. to Def. Mot. at 128; Gase Decl. at ¶¶ 9–10, App. to Def. Mot. at 240; Kasey Depo. at 81, App. to Def. Mot. at 208.

Though Ms. Picard has presented a *prima facie* case of retaliation, she has not presented sufficient evidence to create a genuine issue of material fact that the legitimate, non-discriminatory reason the City has provided for her termination is a pretext for retaliation or that retaliation was a motivating factor.   *Celotex*, 477 U.S. at 322.

### C.    Assault

Ms. Picard also claims Mr. Makanji assaulted her.  This Court has supplemental jurisdiction over this claim because it forms a part of the same case or controversy as Ms. Picard's Title VII claims.  28 U.S.C. § 1367(a) (2006).  When a federal district court has supplemental jurisdiction over a claim, the law of the state under which the cause of action arises is applied.  *Wesley v. Yellow Transp., Inc.*, Nos. 3:05-CV-2266-D and 3:05-CV-2271-D, 2010 WL 3606095, *1 (N.D. Tex. Sept. 16, 2010) (Fitzwater, C.J.).  In Texas, the elements for civil and criminal assault are identical.  *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 522 (Tex. App.—San Antonio 1996, writ denied).  Criminal assault is defined as: (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2) intentionally or knowingly threatening another with imminent bodily injury; or (3) intentionally or knowingly causing physical contact when the person knows or should reasonably believe the other will consider it offensive or provocative.  Tex. Penal Code Ann. § 22.01(a)(1–3) (Vernon 2011).  For the purposes of this claim, only the third definition of assault is relevant: causing offensive or provocative contact.  Though Ms. Picard does not specifically plead this definition of assault, *see* Doc. No. 1 at ¶ 29, this Court must broadly construe pleadings so as to do justice, *see* FED. R. CIV. P. 8(e).  Therefore, this Court will consider the third definition of assault as properly pleaded by Ms. Picard.

Ms. Picard asserts she was assaulted when Mr. Makanji placed his hand on her

back or left shoulder while she was seated and working and he had walked up behind her while they were alone in a laboratory room.  In support, she offers her own deposition testimony to that effect.  Picard Depo. at 47–52, App. to Pl. Resp. at 19–23.  There are few cases in Texas that comment on the actions required in a civil assault case to survive a summary judgment motion.  In *Stokes v. Puckett*, 972 S.W.2d 921, 925 (Tex. App.—Beaumont 1998, pet. denied), the Beaumont court of appeals found evidence that a supervisor had grabbed an employee's bottom several times and had brushed his head against her breasts legally sufficient to support an assault claim based on offensive or provocative contact.  In *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App.—Houston [14 Dist.] 1999, pet. denied), slapping an employee's bottom and rubbing her thigh were found to be legally sufficient.  The actions alleged in this case are not of the same ilk as those found legally sufficient in *Stokes* and *Foye*: the actions in those cases were overtly sexual.  In contrast, the Austin court of appeals in *Macias v. Tex. Dept. of Crim. Justice Parole Div.*, No. 03–7–0033-CV, 2007 WL 2403207, *1 (Tex. App.—Austin Aug. 21, 2007, no pet.), upheld the trial court's granting of summary judgment where the defendant "placed her hand on [the plaintiff's] shoulder for a second."

It is also important to note that these incidents allegedly happened in March 2009.  At the time of these incidents, Ms. Picard had complained once to Mr. Gase about Mr. Makanji's "weird behavior" in February 2009.  Ms. Picard had not yet reported to Mr. Gase a second time, which occurred in April 2009, or filed the complaint

-20-

with Ms. Dadgostar, which occurred in May 2009. Ms. Picard does not allege Mr. Gase reprimanded Mr. Makanji after Ms. Picard's complaint in February 2009, or that Mr. Gase even mentioned the complaint to Mr. Makanji. Picard Depo. at 27–28, App. to Pl. Resp. at 7–8. Ms. Picard does not state in her deposition that she told Mr. Makanji not to touch her shoulder or arm. *See* Picard Depo at 48, App. to Pl. Resp. at 20 (Ms. Picard alleges she confronted Mr. Makanji about unwanted staring in the laboratory, but does not mention a discussion about touching). So, Mr. Makanji was not on notice that his alleged touching of Ms. Picard's shoulder or arm would be perceived as offensive or provocative, through either a reprimand from Mr. Gase or from Ms. Picard herself. While the placing of a hand on someone else's shoulder or arm may not be commonplace, it is the rare situation where that action could be reasonably perceived as offensive or provocative. *Macias*, 2007 WL 2403207, *2 (summary judgment was appropriate where plaintiff failed to present evidence the defendant knew or reasonably should have known the contact would be regarded as offensive or provocative). Accordingly, the Court finds the evidence Ms. Picard has presented is insufficient as a matter of law, such that no reasonable jury could find in favor of Ms. Picard on her assault claim. *Sossamon*, 560 F.3d at 326.

Because Ms. Picard has not raised a genuine issue of material fact as to her assault claim, the Court does not reach Mr. Makanji's argument that Ms. Picard's claim is barred by the Texas Tort Claims Act or the election of remedies pursuant to Texas Civil

Practice & Remedies Code § 101.106.

## IV.    Conclusion

Defendants have demonstrated that no genuine issue of material fact exists in regards to any of Ms. Picard's claims because Mr. Makanji's actions do not constitute sexual harassment, a condition of Ms. Picard's employment was not contingent on the acceptance or rejection of sexual overtures, she was terminated for legitimate, non-discriminatory reasons, and she was not contacted in an offensive or provocative manner. Defendants' motion for summary judgment is **GRANTED** and all of Ms. Picard's claims are **DISMISSED with prejudice**.   Final judgment will be entered in a separate document.   Fed. R. Civ. P. 58(a).

**SO ORDERED**.

Signed August 25TH, 2011.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE